Our first case this morning is, we have actually some consolidating cases. Case numbers 418-0404, 05-06 and 07, Stone Street Capital v. Teresa Hitchcock. For the appellant, we have Mr. Kolodze, Kolodze, Kolodze. Alright, thank you very much, Mr. Kolodze. And then for the appellee, we have Mr. Pavlik, Pavlik. 0 for 2, Pavlik. Is that the correct pronunciation? Pavlik. You may proceed, Mr. Kolodze. Thank you. May it please the Court, Counsel. Your Honors, if Supreme Court Rule 137 means anything, it means that Stone Street Capital could not do what it did in these four cases and that there must be consequences for its conduct. It means that when the appellate court tells you, not once, not twice, but five times that you cannot do something, you cannot then proceed to do it four times. It means, if Supreme Court Rule 137 means anything, it means that no reasonable person could conclude otherwise. And it means that the trial court abused its discretion in denying my client's motion for sanctions. Merriam-Webster's Dictionary defines egregious as conspicuously bad, flagrant. Merriam-Webster's Dictionary could list these four cases as an example of the word egregious. Before I move to the substance of my argument, I'd like to bring up what I pointed out in my reply brief regarding Stone Street's statement of additional facts in its brief. Stone Street appears to think that the rules don't apply to it, and its statement of additional facts does not comply with Supreme Court Rule 341. They listed numerous facts which were argumentative, without citation to the record. As I asked in my reply brief, the court should disregard those facts. There were facts regarding things that are utterly irrelevant to this appeal, such as tax ramifications of structured settlement assignments and Stone Street's practices in seeking approval of assignments. None of those are germane to the issue before this court, with one disturbing exception. And that appears at page 9 of Stone Street's brief, in their additional facts section. Stone Street, at the top of page 9 in its brief, made the following statement to this court. That's what Stone Street tells this court in its brief. In Stone Street's response to my client's motion for sanctions in the trial court, it said the exact opposite. In the record for case number 0404, at page C646, appears Stone Street's response to the respondent's motion for Rule 137 sanctions. And attached to that response, at page C668 of the record, is an affidavit of Abigail Adams, the Division Counsel of Structured Settlement Department for Stone Street. Paragraph 20 of that affidavit, at page C668 of the record, states, Stone Street also received a copy of Hitchcock's annuity policy, uniform qualified assignment, and settlement agreement. In the body of their response brief to the trial court, Stone Street stated at page 3 of that brief, which is page C648 of the record, quote, Stone Street, quote, believed that Ms. Hitchcock waived the provisions restricting assignment contained in Ms. Hitchcock's settlement agreements and annuity policy. And by virtue of this waiver, Stone Street had the legal right to seek a transfer of structured settlement payments, end quote. So not only has Stone Street disregarded the holdings of this court, the multiple holdings of this court, it has seen fit to play fast and loose with the facts, with the record, and with the Supreme Court rules in both the trial court and this court by making representations that appear to be just whatever it feels like making at the time, with no regard to consistency in its statements. Stone Street hired attorney Brian Mack of Chicago to file four transfer petitions in the circuit court of Sangamon County. Why Sangamon County? I'm sorry? Why Sangamon County? Well, that's what I was just going to point out, Your Honor, is why Sangamon County indeed. The Structured Settlement Protection Act mandates that a petition for the transfer of structured settlement payments be filed in the county where the underlying action was filed or could have been filed. There's no dispute the underlying lawsuit, the personal injury case in these cases, was in the circuit court of Cook County. There's never been an explanation or even an attempt at an explanation by Stone Street, either in the trial court or in this court, as to why these petitions were filed here. Well, how did this whole thing even get started? Who contacted whom? Did Jurisia contact Stone or vice versa? I can't figure that out from looking at the briefs. And nor can I, Your Honor. We received discovery in this case consisting of recordings, audio recordings of phone calls. It's never been clear to me exactly who contacted whom first. We do know that someone purporting to be Hitchcock at some point began communications with Stone Street and pretending to be or assuming the identity of Jurisia Hitchcock. So she didn't at the outset say, I'm the mom of the injured person. She said, I am that injured person. Well, Your Honor, initially, it's my understanding, yes. The recordings bear that out. They're not in the record. At some point in the recordings, there are recordings where she identifies herself as Deborah Hitchcock. Well, was it some kind of personal meeting? What's the age difference between these two people, and wouldn't that have been obvious? Well, that's just it, Your Honor. You've touched on a central point in the case. There never was a face-to-face meeting. That's why we're here today. No one from Stone Street or Stone Street's counsel's office ever demanded that the person saying, I want to transfer these structured settlement payments appear and present an ID and prove that they were who they purported to be. Counsel? Yes. That's not required, though, right? Would you agree that that is not a requirement? Under the Structured Settlement Protection Act and the letter of the statute, it is not required. And so we did have the notary, and I would think that when the person showed some type of identification to the notary, perhaps the notary may have noticed. I don't know if there was anything explaining or that would suggest the age of the person who's to be signing the statement. Do you know? Well, the deposition of the notary was taken. It is in the record. Right. I took that deposition, and she testified that the woman that she knew as Recy, who was the mother, signed these documents. She didn't watch her sign them. She assumed that Recy was signing her own name, and Recy never told her she was signing on behalf of her daughter or anyone else. The suspicion is that the mother and the notary were in it together. That is exactly the suspicion, Your Honor. And that's what my client's affidavit states, that it was attached to the 1401 petitions. Was the mother ever prosecuted? My understanding is that she's under indictment in Indiana at this time for fraud. I don't know the details of that. In Illinois, I have not found any criminal proceedings involving her. But that's what happened, and that's... So, counsel, we know that it's not a requirement that they have a face-to-face, but really the crux of the appeal turns on whether or not there was reliance on something that was not the law at the time that these petitions were filed. Correct? Your position is that they were not allowed to assign it based on the case law, and their position is that, well, that was something that we could reasonably argue for, correct? No, well... That's their position. That's their position, correct. Yes. So, we know that there was a change in the law, and I'm having difficulty understanding, and I feel perhaps I'll ask the same question of opposing counsel, but I'm not really understanding this supposed change in the law that flipped the status of the law with respect to these assignments. There was no change with respect to these assignments. All that happened, Your Honor, was that in 2015, the legislature added a provision to the Structured Settlement Protection Act that said you can now leave these anti-assignment clauses. However, in order to do so, you must appear in person before the circuit court, and the circuit court must make findings that it is in your best interest. That was added to the statute. It happened years after. You say it was added. What was the original statute? I thought the language was very similar to what you just cited. The addition, Your Honor, was that notwithstanding an anti-language in the contract to the contrary, that could be waived. There was no language in the statute prior to the amendment that addressed an anti-assignment clause, the presence of an anti-assignment clause, and that's where this court and the other districts of the appellate court made those decisions about what happens in the face of that language. Ruling in Henderson and Nitz and the other cases, where that language appears, even if the petitioner, and in most of these cases, the settling party was, in fact, the petitioner asking for approval of the transfers, even if that party agreed to waive those provisions this court held, the circuit court doesn't have authority to approve that transfer, notwithstanding the fact that you agreed to it. Interestingly, Mr. Mack is the attorney in all those cases. Not all of them, but three of them, Your Honor. Henderson, Schaefer, and Nitz, he was. Which is exactly my point. Mr. Mack, Attorney Mack, when he walked into the courthouse in 2010 across the street, he knew, because he had been counsel of record in three separate cases before this court, he knew that he could not file these petitions. As it stood at that time, when these petitions were filed, the statute was silent as to whether or not you could waive the no-assignment clause. Correct? The statute was silent, but the case law consisted of case law saying, if in the agreement there is a non-assignment clause, you cannot assign it. That is correct. That was the state of the law at the time the petitions were filed.  And then, in 2013, a month after the fourth petition was filed by Attorney Mack, this court issued the settlement funding versus Brenston decision. And in that case, this court addressed a situation that is factually very similar to what we find presented in these four cases. It's a situation where the settlement documents contained an anti-assignment provision, a situation where Attorney Mack was counsel for the factoring company, filed petitions that didn't attach the settlement agreements, but did attach the face page of the annuity policy that contained an anti-assignment provision, same thing that happened here, filed a petition that stated in the body of it that it complied with the Structured Settlement Protection Act, that it did not contravene the order of any court, and that jurisdiction was proper, all of which were done in the four petitions that were filed by Stone Street in these cases. And in Brenston, the court looked at that situation. The court said, as a matter of law, that is a fraud on the court. And that was the law. In 2013, this court affirmed, underscored its prior holdings in Henderson and Green and Nitz and Schaefer and Foreman. And that was the case law that was presented to the trial court on our motion for sanctions. Brenston wasn't the law at the time the petitions were filed, and the law is that you have to look at what the state of the law was when the petitions were filed. But Brenston didn't say anything new. Brenston said exactly what this court had said consistently from 1999 through 2006 in those five cases. It just reaffirmed them and applied them to a new situation that was incredibly similar to what we have here. And we presented that to the trial court, and Brenston is binding on the trial court. And when Brenston said what they did constituted a fraud on the court as a matter of law, I don't think any reasonable person can take the position that the trial judge took here and say Stone Street had a good faith basis to file these petitions. They did not. There is no case law in Illinois that contradicted, criticized, or in any way modified the holdings in Henderson, Schaefer, Green, Nitz, and Foreman. Stone Street's position all along has been, well, if we've got the waivers and nobody's complaining, and everybody's agreeing that the court has jurisdiction, then we should be able to proceed with the settlement. This court said, that doesn't matter, you can't do that. No, I understand that. I'm saying that this has been Stone Street's position all along. It has been. As long as we've got all these waivers, as long as we've got all these signatures, and nobody's contesting jurisdiction or anything else, then we should be able to proceed with this petition. That's what Stone Street's position has been. And it's directly contrary to what this court said it can do. In addition to filing the petitions in the first place, Stone Street also misrepresented to the trial court that it had personal jurisdiction over the respondent, assuming that the respondent was, in fact, my client, who we know now. That's a tough one, though, because, I mean, on paper, they did. We know that's a fraud, but looking at it as a third party, looking at these documents, it looks like they do have personal jurisdiction, because somebody signed off saying that, yes, we've received all this. Respectfully, Your Honor, I disagree. All they did was file a document that says, signed by a forged signature, that says, I consent to the jurisdiction of Sangamon County. But as I've stated in my brief, and as the case law, I think, supports, a consent to jurisdiction is not the same as a waiver of process. There are two elements. I can't help but think back to my trial court days, and got a divorce filed or whatever, and someone enters their appearance. They don't get served. We accept that. What's the difference? Nobody entered an appearance here, Your Honor. Well, what was that you were doing? We know, like Justice DeArmond said, we know it was a fraud. But what you were just referring to, what is that? I don't know, Your Honor. I've never seen anything like this. This is not Stone Street in their brief says, Attorney Matthew Cate entered an appearance for Jeresey Hitchcock. There's no appearance in the record. Right. I understand that. But the document to which you just referred, where the person says, I submit to the jurisdiction of the court, what is that? Let's go back to law school days with personal jurisdiction. Minimum contacts are required for personal jurisdiction. Well, no. Service of process. I think you're going back a little too far. The issue is whether or not the person is submitting to the court deciding the issue. And if a person files something saying, I'm submitting to the court, the court is giving the court jurisdiction over me, I don't think you have to have personal service. If it's legitimate, which, of course, in this case, we now know it's not. But I don't think you have to have personal service. The way I respond to that, Your Honor, is if that were the case, why would the legislature have enacted Section 2-213 of the code that governs the waiver of service of process and set forth a required form for waiving process? Because here we do not have compliance with that provision of the code. We have a document that doesn't even identify, by the way, that Matthew Cate is an attorney. It just says, I've received the advice of Matthew Cate, and it's signed with the forged signature. Then we have a document that says, I consent to the jurisdiction of the circuit court, and it's signed by this forged signature. But we know that sometimes people represent themselves, and there's never an attorney involved, and they file an entry of appearance, or they appear before the court not having been served, and we don't require service. Your Honor, the case law says that you can waive service of process by entering an appearance, and you can enter an appearance in one of two ways. You can file a document called an appearance with the court, or you can step up to the bench when the case is called and appear bodily before the court. Neither of those happened here. A document was filed by someone other than my client, and that does not, I submit, constitute proper service. As Justice Holderway just mentioned a moment ago, in divorce cases, that happens all the time. The respondent may never appear in court. There may be no document entered other than a settlement agreement, an entry of appearance, waiver of summons, and service of process, and they proceed, and the court has jurisdiction, and the divorce gets entered. No, they've never stepped up in front of the bench and said they appear, and no, they've never had the counsel appear for them. So what's the difference? I don't understand. As long as all these documents appeared to be proper, even though we now know they're frauds, why wouldn't that constitute the appearance of Jeresia? Because, Your Honor, it was not filed by the person, by Jeresia Hitchcock. Personal jurisdiction is acquired either by service of summons or by general appearance, and it is derived from actions of the person sought to be bound. So I understand what you're saying. I mean, let me ask you this question. If it had been filed by your client, actually filed by your client, what was filed, would it be okay then? Well, it wouldn't be because it was a forgery. No, no, no, no, no. No, I'm saying if it had not been forged, if it was actually her who signed it and filed it, would it have been okay? If my client hypothetically had signed that document and filed it herself with the court, I think then you would have a colorable argument that she had submitted to the jury. Then I don't think we're necessarily on a different page. I mean, we understand that this was a fraud. It wasn't her. It wasn't her signature. But basically what I'm getting at is that that was sufficient had it actually been her. I suggest, Your Honor, that even if you conclude that there was personal jurisdiction, in view of the fact that this court said you can't file these in the first place, that is not dispositive of the issue. Thank you, Counsel. Counsel, you're out of time, but you will have additional time on rebuttal. Thank you, Your Honor. Thank you. Mr. Pavlik? May it please the Court, Counsel? My name is Tom Pavlik. I'm counsel for State Street. Until literally a few days ago, I was local counsel for State Street, having been brought in to represent them on the motion for sanctions. Ms. Patricia Laborde, in-house counsel for State Street, is no longer with Stone Street as of a few days ago. So my apologies. I don't have the depth of background that counsel has with this case going back to the trial court. Counsel, what I don't understand is why, as soon as it was determined that this was a fraud, why not just give back the money, shut it down, move on? And I think that's what counsel wants his court to believe, but we did not know immediately when that petition was brought to vacate that there was a fraud. It took a period of time to figure this out. Seventeen months? There were a number of depositions, some written discoveries, and I believe a motion to dismiss. You had counsel in Chicago. In the briefs that you talk about, both sides talk about red flags, and there were many in this case. It just seems a little unreasonable that it would take this long to get to the right result. And I think that's actually a dangerous public policy to weaponize a party's right to defend itself. Under counsel's view of the world, we should have immediately rolled over with those two 1401 petitions. I mean, this was a fraud that went back to the very instant she turned 18. Respondent never received any payments. You had the actual insurance company who wrote the annuity fall for this. The bank into which the funds were being deposited prior to any of these assignments fell for the con. I mean, this was a sophisticated and long-running con, and I don't think just because a 1401 petition was brought that Stone Street should have immediately said, yes, you're right. They had an opportunity. They deserved a chance, and they had a right to test that claim, and that's what they did. I get the impression from the record that there was a suspicion that Jerusha was actually in on this at some point and that perhaps they were attempting to recover twice. I don't have that trial court background. Having read the record, that thought crossed my mind, but I cannot affirmatively say that that was in Stone Street's mind as they were prosecuting the motion to vacate or the motions to vacate. I'd like to start off. One thing that we haven't talked about is a standard of review here, which is abuse of discretion. I think that's a heavy lift for the respondent here. Abuse of discretion is against the manifest way to the evidence, and more importantly, you would have to find that no reasonable person could rule as a trial court did. I think that is a fairly heavy burden. Counsel, you've heard the discussion about the state of the law at the time that the petitions were filed. Do you disagree with that? I think that is an accurate statement of the law, that it was silent prior to 2015 when the legislature made it abundantly clear that anti-assignment was no longer a bar. But I think what has gone unsaid here is very important language in that 2015 amendment when the legislature said, us making clear that anti-assignment no longer matters. It said that was declarative of existing law. And we've cited a case that says when the legislature says that it's declarative of existing law, that means that the legislator codified what the legislature believed was the existing law. And that's the Gerla case out of the second district. But what about, I believe, what opposing counsel submitted in terms of the legislature can't retroactively modify? No, but you had a statute that was silent, and you had courts making rulings on that. Now, there's a Brentston opinion that counsel keeps citing, too. An important point to keep in mind, Brentston didn't come down until after the fourth petition to transfer in this case was filed. So I don't think Brentston bears at all. Well, counsel argued that Brentston does not say anything new from what this court and other appellate courts had previously said. What's your response to that? I disagree. Why does it say that's new? I would say that Brentston was new. My view of the cases before Brentston were that there were always objectors in those cases. And in our petitions, as one of the justices pointed out, everyone signed off on this. There were no objectors. That's my understanding of the case law. What is it that Brentston said that was new? Pardon? What is it that Brentston said that was new? Brentston, I believe, said, even if everyone agrees, you can't waive the anti-assignment language. And I believe it's Brentston that led to the 2015 amendment to the statute where the legislature said, hey, no, existing law is, and counsel's right, it didn't overturn any of those prior cases, but the legislature said this was existing law. And that's what we understood was either existing law or we had a good faith belief that warranted an extension of that law. I'm not sure with the legislature saying that the anti-assignment is not a bar, was a statement of existing law. I think that gave the trial court a reasonable basis to rule as it did. Because, remember, we're not here to litigate the motion to vacate. We're here to address whether or not the trial court was correct in denying the motion for sanction. Again, it's an abusive discretion standard. Could any reasonable person disagree? And with the legislature saying this is declarative of existing law, I think that gave the trial court a reasonable basis to rule as it did. I want to focus a little bit on this. How much are the attorney fees that are in question here? This case is really about attorney fees, isn't it? I don't know, Your Honor. You don't know? No, I only came in on the motion for sanctions, Your Honor. I only know what my fees are. I do not know what the underlying fees are. How much were the sanctions that were requested? Is that what you mean? Yeah. The sanctions are the attorney fees, right? Am I wrong? Yeah. The fees she expended. Well, how much are we talking about? That's what I'm asking. I'm sorry, Your Honor. I'm unable to answer that question. You know what you're asking. No, just wait until you're up. Thank you, counsel. I don't want you to waste time on your argument if you don't know. It sounds like counsel does know, so he can address that regardless. What I'd like to focus on is this concept of hindsight. It's very important that we look at the trial court's decision not with the benefit of hindsight, which is 20-20, but we look at it with what Stone Street knew at the time. And I think there is an implicit bias in counsel's argument and in their briefs to try to relitigate this matter and to take a look at it with what we know now, the Brenston opinion, the fact that this was a long-running fraud and that Stone Street and respondent were all conned by this. You have to take a look at this at the time the conduct complained of. We talked a little bit about jurisdiction. I think the court gets that. I just point to the Ahearn case, the First District case, where the court says personal jurisdiction is acquired through service of summons or a general appearance. Not and, or. And the Ahearn case goes on to say a general appearance waives a service of process requirement. I think the court gets it. When somebody submits something to the court, they are submitting their general appearance. Well, I get what an interim appearance is. Is that what we had in this case? We're talking about a general appearance. Again, I think the Ahearn case gives us that answer. It says it's any pleading that contains allegations or defenses, and I think that's what the document that was filed, albeit that it was a fraud and it contained allegations. She understands and agrees that a petition is filed. She's a resident. She consents. Those are allegations. I think under the Ahearn case that that's a general appearance, and the trial court had a reasonable basis to believe that we, Stone Street, did not engage in sanctionable conduct. I mean, clearly, since it was a fraud, there couldn't have been. But, again, what we're here today to talk about is the motion for sanctions, not to relitigate the underlying facts. Well, I know the trial court said something along the lines of, if this had gone on, then sanctions may have been appropriate. So is it fair to say that the trial court basically took the position that you stated earlier, it wasn't wrong for you all to have the opportunity to flesh this out and to defend and to ensure that it was a fraud before you just folded? That's what I took from it. But, again, I have the handicap that I wasn't involved in the underlying litigation. But that is certainly what I took from it. And that goes back to one of my initial things. You can't weaponize a party's good-faith attempt to get to the bottom of the facts. Again, this is a long-running system. But does that really address the issue of the state of the law at the time the petitions were filed? I don't think that really goes to that issue. That goes to the issue of you not paying it right away once you found out. But, to me, it's a different issue whether or not you should have even been seeking this. And he has three or four prongs in his argument. State of the law is one. And I think, again, when we have to take a look at the abuse of discretion standard, I think in ruling on what the status of the law was and was Stone Street's conduct reasonable under the sanctions standard, the judge properly looked at the 2015 amendments where it said this is declarative of existing law. And that gives him sufficient basis to deny the motion. Again, what's reasonable about filing these petitions in Sangamon County when the accident occurred in Cook County? No one lives in Sangamon County. And there's apparently no rationale whatsoever as to how it ended up here. What's reasonable about that? Why wouldn't that raise a red flag like something is amiss here? My understanding, and, again, this is anecdotal at best, when I go over to the Sangamon County Courthouse or have in the past, there were many structured settlements set on the docket. And I don't know if the structured settlement world decided this was a convenient place to have them. That's kind of scary. Yes, it is. I don't know. Again, I've never really been involved in structured settlements. And I don't have the trial court background on this matter. I can give you my speculation, but I don't know the answer. I wanted to zero in on what Stone Street did to try to true up these red flags, try to determine identity. And I think the affidavit of Abigail Adams, which is in the record, cited to by counsel, gives a good recitation of what Stone Street did to try to figure out who they were dealing with. But I think the court appropriately noted, even though the Structured Settlement Act didn't require notarization, we had all the documents notarized. And as it appears from reading the deposition, again, I wasn't at the deposition, but reading the deposition, at a minimum, the notary didn't do what she was supposed to do. It was a gross failure to follow the notary act. Worst case scenario, she was part of the fraud. But we had no reason to believe that the notary was either negligent or was part of the fraud. And I think Stone Street is entitled to rely on that notary, and I think that is another reason the court had a basis to deny sanctions. We had notarized documents. Counsel wants to suggest that we should have had an in-person signing requirement. Again, not mandated by the statute, but if that is the court's ruling, that we have to do that to avoid sanctions, it totally eviscerates the purpose of having a notary. The purpose of having a notary is to get some independent verification that the person who has signed the document is the person he or she says. Again, the abuse of discretion standard is a high threshold, I believe, to meet. This court would have to find that no reasonable person could have ruled as the trial court did. And I think I have given this court a handful of reasons on each of counsel's prongs, each of his arguments on why the court could have had a reasonable basis to rule as it did. Coupled with the fact that we can't engage in hindsight, even though it's 2020, and you have to analyze it from what Stone Street thought at the time, I think that burden becomes even more difficult to sustain for the respondent. In short, I think the court had sufficient facts and reasonings to support its denial, and we ask that the court affirm the ruling. Thank you very much. Any rebuttal, Mr. Polojay? Counsel, before you begin, is there any other theory other than just following a motion to vacate that your client might have pursued as far as a lawsuit against Stone Street where you could have asked for damages which would have included attorney fees? My client, Jeresey Hitchcock, suing Stone Street, is that what you're asking? Yes. Well, I think that's what Supreme Court Rule 137 is for, Your Honor. It provides a manner of obtaining redress when you're forced to come into court and defend baseless allegations. That's why the rule exists. Well, okay. We'll talk about going back to law school when the American school says. Was there a cause of action you could have actually brought forward instead of just following a motion to vacate? Well, I haven't researched that, Judge. Off the cuff, I would say perhaps there is some kind of malicious. You're basically saying it's a silly question. It wasn't this. No, not at all. You might be right. I do think that's exactly why we have Rule 137. That's the Supreme Court saying, look, if you bring a baseless, frivolous claim, and somebody has to come in and hire a lawyer and defend it, you've got to pay their fees. And to counsel's point that, you know, abuse of discretion is a high standard, it is indeed. But when this court says five times you can't do this, I don't think a trial judge has discretion to say, well, I'm going to disregard that. It's okay. Because that's really what happened here. Leaving aside the service of process, leaving aside the in-person verification, and I suggest with the Department of Justice statistics I put in there in my brief. And the fact that they had a copy of her Social Security card. They had a copy of her state ID. They saw that the signatures were different. They saw that the addresses were different. They flagged that. Relying on a notary under those circumstances. Maybe generally it's okay. On these circumstances, that is not objectively reasonable. But putting all that aside, this court said over and over you can't bring these petitions. They filed them. And then, as the court said in ANA Acoustics, an attorney has a continuing professional duty to promptly dismiss a baseless lawsuit, even over his client's objections when he learns he no longer has grounds for a case in Justice White. You brought that up right out of the gate. Once we filed our 1401 petitions and they were confronted with this court's decisions, including Brentston, which had been decided in the interim, they had an obligation under Rule 137 to drop the case. And instead, they dug in their heels and fought for a year and a half, 17 months, to try to keep these orders in effect. That's a continuing violation of Rule 137. So, abuse of discretion is a high threshold. It's been met here. With respect to the amendment of the statute, the Supreme Court squarely rejected their argument in Roth v. Yackley. That involved a case where the legislature amended a statute, said it's declarative of existing law, and thereby purported to overrule the court's prior decision. And the court said, that's a separation of powers problem. The legislature cannot overrule our decisions construing a statute. And that's what this court did five times. It construed the statute, the predecessor statute under the Deterrence Code, and then the structured settlement. So, the arguments that they've mounted throughout this case have not themselves been supported by existing law. So, they violated Rule 137 when they filed the petitions. They violated Rule 137 while they continued to defend them by advancing arguments that had no support themselves in the law. How much were the lawyer fees? Well, Your Honor, I don't have a total. Ballpark. Ballpark? Yes. Well, I do have, I can tell you that as of the... What did you ask the trial court for? We did not ask for a specific amount. I mean, for sanctions, what amount? We did not. We asked for leave to submit our invoicing because we asked for fees including the motion for sanctions. So, our plan was to request, if the court was going to grant sanctions, then we would submit our affidavits and bills. I cited in the conclusion section of my brief a case where that's exactly what happened. And that's what I asked for. I can tell you, Ballpark, Judge, that not including this appeal, I believe there's somewhere around $250,000 as of the ruling on the motion for sanctions. This case involved a lot of paper and a lot of time and 17 months of fighting for my client to get money that she was owed for a traumatic brain injury as a child. Again, the word is egregious. I think our burden's been met here. I think the trial judge respectfully abused his discretion. There ought to be a consequence for flouting this court's decisions, and that consequence should be applied. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess until the next case.